May it please the Court. Good morning, Your Honors. I'd like to reserve two minutes for rebuttal at this point in time. My name is Joel Wolfe, and I represent Mr. Prus in this matter. Before the Court today, there are two very important issues in this case. The first issue is whether or not the persecution that Mr. Prus has suffered has been rebutted. And the second issue is whether or not Mr. Prus found safe haven in the Ukraine. The answer to both of these questions is absolutely no. On the presumption being rebutted, the government's position is that because Mr. Prus, when he went back to Uzbekistan for two small, limited trips, he did in fact rebut the presumption that there was persecution. Mr. Prus, in going back to Uzbekistan, went back for the one and only reason of getting back to the United States, to come to the United States, to file for asylum. He left the United States to go visit his son who was sick in the Ukraine, who was living with his mother at the time. The trips, as I was saying, were very short, very limited in duration. When he went to Uzbekistan, he did not stay in Uzbekistan. He went for a very, very short amount of time. The only reason he went back to Uzbekistan is to go to the American consulate and the embassy to get a visa to get out of there to come to the United States. There was no – there was no intention to stay there. There was no intention to be there for any extended period of time because of the past persecution that he faced. But does the fact that he did go back and was there for a period of time, does that speak at all to the question of whether he has a real fear of persecution in the future? Well, Your Honor, it was a balancing act for Mr. Prus. He was – he was balancing the fear he had with the idea of going back to see his son who was sick at the time. His son was at elementary school level who was – needed attention. And he left the United States to go visit him. He took the chance of going back into Uzbekistan, which is the only place that he could obtain a visa to come to the United States. Since he had no immigration status and no residency status in the Ukraine, he wasn't able to go to the American consulate in the Ukraine and ask for a visa. He was a citizen of Uzbekistan, and therefore he had to process his visa at the American consulate in Uzbekistan. Was there any evidence of change of country condition that was presented by the government? Actually, Your Honor, there was not. Well, there was some change of country condition presented about the Ukraine, correct? Correct. Did they present any evidence, as you've reviewed the record, about change of country condition on Uzbekistan? On Uzbekistan? Not to my knowledge. So if they didn't present any evidence about change of country condition on Uzbekistan, must I then remand for giving them a chance to present such evidence based on our case law? That would be one option, yes, Your Honor. I'm suggesting, is it the option that one must take given our ninth circuit case law? At the very least, yes. At the very least, this should be remanded to lower court. And what is the standard by which I wouldn't remand? Is there a higher standard that must be met in the case that I wouldn't remand? The substantial evidence standard says that you may reverse the decision if the evidence compels that the decision wasn't correct. Yes. So are you then asking me to remand according to ninth circuit precedent such that the government can produce evidence on the country condition change in Uzbekistan, if there is any? Yes, Your Honor. On a side note, I would actually suggest and state that it's actually gotten worse, it hasn't gotten better. Well, but that's not for me to decide, correct? Correct, Your Honor. Okay. And really that's the same issue as relates to withholding and removal, isn't it? Absolutely, Your Honor. Okay. Did you exhaust your social group claim? I believe that we did not. And the reason I do not believe we exhausted the social group claim is because the immigration judge from the beginning was talking about the fact that Mr. Proust was an ethnic Ukrainian. And in my brief, I explained that there was a one-two triggering mechanism, that when he was in his – when he was in the aviation school teaching, that they said, you don't look like a Muslim. And therefore, when he made the response, the response went from his ethnicity to his religion. And at that point in time, that triggered the persecution from the people, since they – the cat was out of the bag and they knew he was a Baptist. What's the social group? I'm sorry? What's the social group that's the basis of the social group claim? That's a good question, Your Honor. It would be ethnic Ukrainians who are living in Uzbekistan. Isn't that really an ethnic or racial claim? I mean, I haven't figured out what the social group is other than something that fits under another one of the categories. Usually social group is meant to cover somebody, and the arguments have to do with homosexuals, for example, something that isn't indicated by one of the other more traditional groupings. But it seems to me his claim is entirely an ethnic and religious claim. It is a religious claim. It is primarily a religious claim. But the average person on the street in Uzbekistan cannot – does not know what his religion is. But they do recognize the fact that he is different. So the fact that he is different, they ask him whether or not where he's from. It wouldn't be uncommon for some – it would be similar to somebody who had a very thick foreign accent here and somebody saying, well, where are you from? Only it would be physical characteristics versus vocal characteristics. The other item, if I may, Your Honor, the second prong is the safe haven. Mr. Pruse at no time was offered firm resettlement into the Ukraine. In fact, the I.J. and the Board of Immigration Appeals conceded that there was no offer of permanent residency. If that's so, does the I.J. still have discretion in that area? In other words, even if you don't meet the firm resettlement rule, is there still sort of a matter of pull-a-type discretion that's there? I believe the discretion was overreached, because not only was there – not only was there an issue of offer to permanent residency, he quoted as to what Ukrainian law, the resettlement requirements in the Ukrainian law are regarding the fact that he had to have been there five years and speak the Ukrainian language. He was there studying school, but he was not there as an immigrant. He was there as a nonimmigrant student. He had no intent of staying there. Furthermore, Mr. Pruse does speak Russian. He does not speak Ukrainian. And the reason being is in the schools at that time, going back in time, 1986 to 1993, that's when the Balkanization happened of the Russian Federation. So all the states, whether it be the Ukraine, Uzbekistan, they all spoke Russian. However, you didn't have to speak Ukrainian to be Uzbeki and study at a school in the Ukraine. Okay. We're hoping to save two minutes for rebuttals. So do you want to say what you have left? Yes, please. Thank you, Your Honor. Good morning, Your Honors. May it please the Court? My name is Jason Hamilton, and I represent the United States. After a full merits hearing where Petitioner was represented by counsel, the immigration judge found in his discretion that Petitioner did not warrant asylum in the United States because his many strong preexisting ties to Ukraine rendered that country an effective safe haven from any persecution. Furthermore, the immigration judge also found that Petitioner was not statutorily eligible for asylum in the United States because he did not have the necessary, well-founded fear of future persecution in Uzbekistan. Well, but in order to get to that, you've really got to find that he didn't have any past persecution. And I felt like the IJ, based on his decision, said there was past persecution, which gives him a presumption of well-founded fear of future persecution, doesn't it? You are correct, Your Honor. And if he gets a well-founded fear of future persecution presumption, then one should, if one's representing the government, present country condition change. Or one's got to one has ever found under their law, under our law, that return trips will rebut that presumption? Your Honor, I have not found any cases in the Ninth Circuit that said return trips would rebut alone. However... Doesn't Boer Sedano, and this is Idaho talk, I don't know how you really say it, Boer Sedano, doesn't it say return trips do not? Your Honor is correct. I was going to mention that case, which I had before me. It says that the court has never previously alone on the basis of return trips. However, government would respectfully contend that that does not mean the court could not find, especially given the particular circumstances of this case. And the government also... I have to say I'm puzzled about the same thing, because the regulation, 208.13, which recognizes that establishing past persecution means you've got a presumption of well-founded fear, and then it specifically identifies the ways by which that presumption can be rebutted. And it talks about either a fundamental change in circumstances, and I don't know that return trips are enough to show that the country's really changed or that the government's offered any serious evidence or that the I.J. found, based on any such evidence, that there's been a change. The second way is relocation. And that's going to overlap with the safe haven, which we'll talk about in a minute. But neither of those seems to open the door to saying, okay, past persecution is rebutted by return trips. Now, I can understand some logic of saying, from a subjective level, the petitioner may not have a well-founded fear of future persecution if he's constantly back in the country. But a couple of fairly isolated trips for discrete reasons hardly seems very supportive of the notion that this past persecution, which the I.J. found, that that presumption is rebutted. Your Honor, the government must respectfully disagree with your interpretation. It is the government's contention that it is a combination of his multiple return trips to Uzbekistan voluntarily and without incident, combined with the fact that Petitioner failed to file for asylum in the United States despite several entries. Petitioner claims that he fears being removed to Uzbekistan, where he will be persecuted. Yet he first entered the United States in for a minimum, I believe, of a one-month visit to see his son. He returned to the United States, then returned to the Ukraine. Only finally, in May of 2003, did Petitioner actually bother to file for asylum. The immigration judge said that it appeared to him that Petitioner was, quote, keeping his options open. And as you hinted with the mention of subjective and objective fear, the immigration judge said that this combination of return trips and failure to file for asylum raised serious questions as to whether Petitioner had a subjective fear of persecution in Uzbekistan. And if he did, did that fear have the necessary objective component? The immigration judge ultimately found that it did not. And upon consideration of the case, the Board of Immigration Appeals specifically cited the fact that Petitioner had voluntarily returned to Uzbekistan without incident as being the primary reason for upholding the immigration judge's decision. Are there any cases, again, are there any cases that you know of in our circuit which would suggest that these two trips, I mean, the problem comes in that I'm trying to find a way, because I looked at the regulation and I look at the case law, and I say countrywide, countrywide condition change is an easy way to go. It's something that's normally done. And in my book, the government presented no countrywide condition change for Uzbekistan or whatever, however you say that country. I mean, nothing there. And therefore, they're trying to, it seems to me, use something that's not a novel approach to undo the presumption that the IJ says this guy's credible, the IJ says this guy has passed persecution, and now with some novel attempt to do what they could have done, but they don't have the country change. That's the bottom line. So then, and I guess this goes to the second charge, so then they say, all right, we'll call this new nation a safe haven, even though it even requires regulations to call it a safe haven. Your Honor, which question would you like me to answer for you? Your Honor, far be it from me to put myself in the place of DHS counsel, but I believe once that Mr. Pruce admitted on direct examination and then followed up with cross-examination that he had voluntarily returned to Uzbekistan, it was not needed to show any changes in that country itself. The issue of change in that country was not necessary, because Petitioner was essentially telling the Court, I'm not afraid. I've gone back. Are you unwilling, just as a human being, are you willing not to, do you refuse to do everything that might make you afraid? I mean, human beings don't react that way. Human beings take on risks sometimes. So just the demonstration that he went back, I can't find that to be substantial evidence of a proposition, let alone one that rebuts a presumption which the regulation establishes. Your Honor, again, I think it goes to the fact that it was multiple trips. He went back once, then he came back another time, and then the records seem to indicate, well, going to Ukraine, he transited through Uzbekistan. If the man was truly afraid that while he was there, the government or third-party individuals would find and harm him or prevent his leaving, then one would assume you would avoid returning to that country. I might not go on a frolic, but he says he was told that's the only way he could get the documentation he needed to go to the United States. So you take on a risk. Correct. But I think... And his child was sick the other time. I mean, you do a lot for your children, including take a van if you need one. Mr. Hamilton, if we disagree with you on this point, if the panel disagrees with you, what's the appropriate remedy here? An outright reversal or a remand? In other words, tell me why we should give the government another shot to put forward more evidence to rebut this presumption since it was already given one opportunity? Your Honor... You may have failed on that. I believe in this opportunity, as you discussed earlier, it may be appropriate to remand this case to allow DHS to introduce country condition reports for Uzbekistan. To give them a second bite of the apple. I would not phrase it as such, Your Honor. I would view it as DHS believed that given petitioner's testimony, he had rebutted his own well-founded fear and that further information on Uzbekistan was unnecessary, given petitioner's statements, his failure to file for asylum, his return trips, and whatnot. Your Honors, if I may return to the issue of safe haven, and if I may link it to the fact that his child is there, that is correct. Petitioner fled from Ukraine. I'm sorry, fled from Uzbekistan to Ukraine. Petitioner is ethnically Ukrainian. The immigration judge believed that petitioner was fluent in Ukrainian language. Regardless, petitioner resided and studied there for a period of seven years, between 1986 and 1993. Petitioner married a Ukrainian citizen who was a practicing Baptist and is openly registered as such with the Ukrainian government. Petitioner's wife and child currently reside in Ukraine, and petitioner himself left the United States on several occasions to visit his child before returning to the United States. In addition, the immigration Well, let me cut to the quick, because the time is getting short. The BIA's decision specifically cites the matter of Pula to justify the use of safe haven as a factor in the exercise of discretion. And our court has said at least twice prior to the BIA's decision here that matter of Pula has been superseded by the change in regulations which set forth what's required for firm resettlement. Is matter of Pula still good law for the BIA to rely upon? Correct, Your Honor. The government would cite your attention to the case of Kaloubi v. INS, where the Ninth Circuit held that it is, it could not say that the immigration authorities are without discretion to consider the factors enumerated within the Pula decision. Your Honors, I see that my time is up. If I may conclude, petitioner has not offered any compelling evidence that would require reversal of the immigration judge's or board's and the government respectfully requests that this court deny the petition for review. Thank you. Thank you. Petitioner has a little bit of time left. Very quickly, Your Honors. I would just like to reiterate that, number one, that there was no firm resettlement. Mr. Pruce's wife was born in the Ukraine. Therefore, that's where she stayed. And she was not staying in a house on their own. They are staying with friends from their church. The child is in fear. The child does not have Ukrainian citizenship because he was born in Uzbekistan in 1994. Furthermore, there was no and is no safe haven there. There was no offer of resettlement. And there is no, for him to which he does not. And number two, I have to say I'm a little skeptical. He survived just fine in Ukraine for seven years or something like that. Yes, Your Honor. Speaking Russian, the lingua franca of the schools and the government. Is that in the record below as to what language he spoke? Yes, Your Honor. It's actually in the asylum application. However, I saw that the judge and the judge said that he spoke Ukrainian. I was not the attorney of record in that case. However, I did notice this discrepancy. Well, that's a factual finding, isn't it, by the IJ? Yes, Your Honor. And that for a number of reasons why I believe this should be reversed. Thank you, Your Honor. Thank you. We thank both counsel for the argument. The case just argued is submitted.
judges: Clifton, Smith, Sandoval